# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| SINCLAIR AND ASSOCIATES OF GREENVILLE, LLC, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:16-cv-00465-DCN |
| vs. | ) ) | **ORDER** |
| CRESCOM BANK, ANTLER ROAD, LLC, CRESCENT HOMES SC, LLC, PARK INVESTORS, LLC, JAMIN HUJIK, EDWARD M. TERRY, and ROBERT E. SAMPLE, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants Antler Road LLC, Crescent Homes SC, LLC, Park Investors, LLC, and Edward M. Terry's ("defendants") motion for partial summary judgment, ECF No. 84, motion in limine, ECF No. 98, and motion to bifurcate, ECF No. 104; defendants Antler Road LLC, Park Investors, LLC, and Edward M. Terry's ("Baker Plantation defendants") motion for summary judgment, ECF No. 101; defendant Crescent Homes SC, LLC's ("Crescent Homes") motion for summary judgment, ECF No. 103; and plaintiff Sinclair and Associates of Greenville, LLC's ("Sinclair") motion for sanctions, ECF No. 117.  For the reasons stated below, the court denies defendants' motion for partial summary judgment, motion in limine, and motion to bifurcate. Further, it denies Baker Plantation defendants' motion for summary judgment, denies Crescent Homes's motion for summary judgment, and grants Sinclair's motion for sanctions.

# I. BACKGROUND[1]

Sinclair is a design firm engaged in the business of providing engineering, land surveying, and project management services, with particular expertise in the area of pool design and engineering. Compl. ¶¶ 5, 7. In or around 2004, Sinclair contracted with Summerville Homes, LLC ("Summerville Homes"), the then-owner of the Baker Plantation subdivision in North Charleston, South Carolina, to prepare civil engineering and architectural plans and technical drawings for a pool and amenities center at Baker Plantation (the "Works"). Id. ¶¶ 31, 32. Sinclair then prepared and sealed the Works, and licensed the Works to Summerville Homes. Id. ¶¶ 33, 40. According to Sinclair, this license granted a non-transferable, limited right to use the Works in connection with Summerville Homes's construction of the amenities center and pool at Baker Plantation. Id. ¶¶ 39–41. However, Sinclair never sold the Works or any interest therein to any party. Id. ¶ 39.

Summerville Homes never began construction on the pool and amenities center, but instead, conveyed the Baker Plantation property to defendant CresCom Bank ("CresCom") via a deed in lieu of foreclosure. Id. ¶¶ 47, 48. Around the time of this transaction, CresCom somehow obtained a copy of the Works.[2] Id. ¶ 49. CresCom subsequently conveyed the Baker Plantation property and the Works to defendant Antler Road, LLC ("Antler Road"). Id. ¶¶ 57, 58, 61. In December 2011, defendant Jamin

---

[1] The following facts are drawn from Sinclair's complaint and presented in the light most favorable to Sinclair.

[2] The complaint does not explain how CresCom obtained the Works, but simply states that "[o]n information and belief, in relation to CresCom's acquiring the Baker Plantation property, CresCom obtained a copy of the Works from a party other than [Sinclair]." Compl. ¶ 49. Defendants contend that, to facilitate CresCom taking over the mortgage on the Summerville Homes, Sinclair provided the Works directly to CresCom "with knowledge of and for the purpose of allowing CresCom to market the project to potential developers." ECF No. 84 at 2.

Hujik ("Hujik"), the vice president of CresCom, and Edward M. Terry ("Terry"), the manager of Antler Road and president of Crescent Homes SC, LLC ("Crescent Homes"), each asked Sinclair whether it would be willing to release its copyrights in the Works.  Id. ¶¶ 12, 14, 64–67, 76–79.  Sinclair maintains that on both occasions it stated that it would be willing to do so in exchange for payment, but none of the defendants ever accepted this offer.  Id. ¶¶ 65, 77–79.  In fact, Terry personally rejected the offer on December 29, 2011, stating that the Works were not worth the amount Sinclair requested.  Id. ¶ 79.

According to Sinclair, Antler Road subsequently used the Works to construct the pool and amenities center at Baker Plantation despite never having paid for the Works. Id. ¶¶ 81, 82.  After purchasing the Baker Plantation property from Antler Road, Crescent Homes also used the Works in this manner.  Id. ¶¶ 83, 84, 91.  At some point, either Antler Road or Crescent Homes provided defendants Park Investors, LLC ("Park Investors") and Robert E. Sample ("Sample") with copies of certain portions of the Works, which Park Investors used to construct the amenities center and Sample used to create derivative plans for the pool.  Id. ¶¶ 95–110.  Sample's derivative plans were later used to obtain a construction permit for the pool from the South Carolina Department of Health and Environmental Control ("DHEC").  Id. ¶ 112.  Sinclair claims that at all times relevant to this action, the various defendants were aware that either Antler Road or Crescent Homes planned to use the Works in this manner and that neither Antler Road nor Crescent Homes had the right to so use the Works.  Id. ¶¶ 62, 68–76, 80, 85, 90, 91, 99–101, 106–109.  Crescent Homes now markets the Baker Plantation subdivision using the pool and amenities center, id. ¶ 117, and all defendants have profited from their use or conveyance of the Works, id. ¶ 118.

On February 17, 2016, Sinclair filed the instant action bringing claims for direct copyright infringement, contributory copyright infringement, conversion, and violation of the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10, et seq. ("SCUTPA"). On November 17, 2016, the court dismissed Sinclair's claims for violation of SCUTPA, leaving only its state law conversion claim and its federal claims under the Copyright Act. On June 2, 2017, defendants filed a motion for partial summary judgment, ECF No. 84, to which Sinclair responded on June 16, 2017, ECF No. 92. On June 30, 2017, defendants filed a motion in limine, ECF No. 98, to which Sinclair responded on July 14, 2017. On August 1, 2017, the Baker Plantation defendants filed a motion for summary judgment, ECF No. 101, to which Sinclair responded on August 15, 2017, ECF No. 109. On August 1, 2017, defendant Crescent Homes filed a motion for summary judgment, ECF No. 103, to which Sinclair responded on August 15, 2017, ECF No. 110. On August 1, 2017, defendants filed an amended motion to bifurcate, ECF No. 104, to which Sinclair responded on August 15, 2017, ECF No. 111. On September 22, 2017, Sinclair filed a motion for sanctions, ECF No. 117, to which Terry responded on October 6, 2017, ECF No. 121, and Sinclair replied on October 13, 2017, ECF No. 122. The motions have been fully briefed and are now ripe for the court's review.

## II. STANDARDS

### A.  Motion for Summary Judgment

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district

court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir.

2012).  However, to defeat summary judgment, the nonmoving party must rely on more

than conclusory allegations, mere speculation, the building of one inference upon

another, or the mere existence of a scintilla of evidence.  See Anderson, 477 U.S. at 252;

Stone, 105 F.3d at 191.  Rather, "a party opposing a properly supported motion for

summary judgment . . . must 'set forth specific facts showing that there is a genuine issue

for trial.'"  Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended

2010)).  If the adverse party fails to provide evidence establishing that the fact-finder

could reasonably decide in his favor, then summary judgment shall be entered "regardless

of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"  Id.

(quoting Anderson, 477 U.S. at 248).

### B.      Motion in Limine

The purpose of a motion in limine is to obtain a preliminary ruling on the

admissibility of a particular evidentiary matter.  Luce v. United States, 469 U.S. 38, 40

n.2 (1984).  A court will exclude evidence on a motion in limine only if the evidence is

"clearly inadmissible for any purpose."  Hall v. Sterling Park Dist., 2012 WL 1050302, at

*2 (N.D. Ill. Mar. 28, 2012).

### C.      Motion for Sanctions

Federal Rule of Civil Procedure 37(b)(2) provides that "[i]f a party or a party's

officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or

31(a)(4) – fails to obey an order to provide or permit discovery, including an order under

Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just

orders."  Such orders may include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Federal Rule of Civil Procedure 30(d)(2) provides that a court "may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Whether to impose discovery sanctions lies within the wide discretion of the court. See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 595 (4th Cir. 2003).

## D.    Motion to Bifurcate

Federal Rule of Civil Procedure 42(b) provides as follows:

Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b).

Under Rule 42(b), "the granting of separate trials is within the sound discretion of the trial judge." Bowie v. Sorrell, 209 F.2d 49, 51 (4th Cir. 1953). Separating issues for trial, however, "is not to be routinely ordered." Fed. R. Civ. P. 42(b) advisory committee's note; see also 9A Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 2388 (3d ed. 2008) ("Rule 42(b) should be resorted to only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule.").  Although bifurcation may be appropriate when resolution of certain issues could be dispositive of the entire case, see O'Malley v. U.S. Fidelity & Guaranty Co., 776 F.2d 494, 501 (5th Cir. 1985) (finding the district court did not abuse its discretion in bifurcating the coverage and bad faith issues), if the court orders bifurcation and certain issues are not resolved, "the court would be forced to hold two trials," which clearly impedes judicial economy.  Lester v. Homesite Ins. Co. of the Midwest, 2014 WL 6682334, at *2 (S.D.W. Va. Nov. 25, 2014) (rejecting the defendant's contention that potential resolution of insurance coverage issue justified bifurcating and staying contract claim).

## III.   DISCUSSION

### A.     Defendants' Motion for Partial Summary Judgment

Defendants filed a motion for partial summary judgment on Sinclair's conversion claim.  ECF No. 84.  Sinclair's complaint brings a conversion claim against all defendants, alleging that they wrongfully possessed and retained the Works, converted the Works to their own use, failed to return the Works to Sinclair, and that Sinclair has been damaged by such conversion.  Compl. ¶¶ 136–44.  Defendants argue that federal copyright law completely preempts this state law conversion claim.  ECF No. 84 at 1.

The supremacy clause of the United States Constitution requires that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  "[A]cts of the

State Legislatures . . . [that] interfere with, or are contrary to the laws of Congress [are to be invalidated because] [i]n every such case, the act of congress . . . is supreme; and the law of State though enacted in the exercise of powers not controverted, must yield to it." Gibbons v. Ogden, 22 U.S. 1.211 (1824). "[S]tate laws can be pre-empted by federal regulations as well as by federal statutes." Hillsborough County, Fla. v. Automated Medical Lab., Inc., 471 U.S. 707, 713 (1985). "Preemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Gade v. Nat'l Solid Waste Mgmt. Assoc., 505 U.S. at 98.

State law claims can be preempted by the federal Copyright Act, if the state law cause of action "involve[s] a right equivalent to one of those identified in" the Copyright Act. Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229 (4th Cir. 1993). However, there will be no preemption if the state law cause of action requires an extra element in addition to the acts of reproduction, performance, distribution or display, "provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." Id. (internal quotation marks omitted). State law conversion claims will not be preempted by federal copyright law if they are "fundamentally distinct from the kind of claim that could be brought under the Copyright Act." Coll. of Charleston Found. v. Ham, 585 F. Supp. 2d 737, 748 (D.S.C. 2008). "A state law action for conversion will not be preempted [by the Copyright Act] if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying plaintiff's work." United States ex rel. Berge v. Board of Trs. of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997). However, if the plaintiff simply

alleges only the "unlawful retention of its intellectual property rights," rather than the unlawful retention of a physical object, federal law preempts that conversion claim. Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 444 (M.D.N.C. 2005).

For defendants' preemption argument to succeed, they must demonstrate that Sinclair's conversion claim has no extra element beyond the elements of Sinclair's copyright infringement claim. South Carolina defines conversion as "the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." Crane v. Citicorp Nat'l Servs., Inc., 437 S.E.2d 50, 52 (S.C. 1993). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property." Regions Bank v. Schmauch, 582 S.E.2d 432, 442 (S.C. Ct. App. 2003). The Copyright Act grants the owner of a copyright the exclusive right to, among other things, reproduce the copyrighted work, prepare derivatives of works based upon the copyrighted work, and distribute copies of the copyrighted work to the public. 17 U.S.C. § 106.

Defendants argue that Sinclair's conversion claim is in no way "qualitatively different" than Sinclair's claim for violation of the Copyright Act, and that the core of both claims are the same—namely, that the defendants used the Works without permission. ECF No. 84 at 6–7. Sinclair's conversion claim in its complaint alleges that defendants wrongfully possessed and retained the Works, converted the Works to their own use, and failed to return the Works to Sinclair. Compl. ¶¶ 136–144. Sinclair contends that this makes its conversion claim differ substantively from its copyright claim, because the Copyright Act does not include any provision governing the exclusive

right to use and possess physical property belonging to an owner.  ECF No. 84 at 7.  The court agrees.

In Tire Engineering and Distribution, LLC v. Shangdong LingLong Rubber Co., the Fourth Circuit found that the Copyright Act did not preempt the conversion claim, because Shangdong had "unlawfully obtained copies of [the original plaintiff's] blueprints and retained those copies, thus denying Alpha the 'right to control' them." Tire Engineering and Distribution, LLC v. Shangdong LingLong Rubber Co., 682 F.3d 292, 310 (4th Cir. 2012).  This control over the physical documents that contained the copyrighted ideas sufficed as the "extra element" required to avoid preemption by federal copyright law.  Id.  In the same way, Sinclair's allegation that defendants wrongfully possessed the physical Works—not just the design ideas contained in the Works— prevents the Copyright Act from preempting its conversion claim.  Therefore, the court denies defendants' motion for partial summary judgment.

**B.**      **Baker Plantation Defendants' Motion for Summary Judgment**

The Baker Plantation defendants filed a motion for summary judgment on Sinclair's copyright infringement claims.  ECF No. 101.  They first argue that they should be granted summary judgment because Sinclair's pool and amenity center architectural plans are not sufficiently original or creative to warrant protection under the Copyright Act.  Id. at 1.  They next contend that they did not infringe any alleged copyrights because the architectural plans at issue were ultimately used for the specific project for which they were designed.  Id.  Because there are genuine disputes about several material facts regarding the copyright infringement claims, the court denies the motion for summary judgment.

### 1. Whether the Works Warrant Copyright Act Protection

The Baker Plantation defendants argue that Sinclair does not have an enforceable copyright claim because the Works do not merit copyright protection.  Sinclair has obtained a certificate of copyright in the Works, and a "valid certificate of copyright registration creates a presumption of originality for five years from the date of the registration."  Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 430 (4th Cir. 2010).  However, "this presumption is fairly easy to rebut because the Copyright Office tends toward cursory issuance of registrations . . . [and] the presumption of validity may be rebutted . . . [by] evidence that the work had been copied from the public domain or by evidence that the work was a non-copyrightable utilitarian article." Id. (internal quotation marks omitted).  To be copyrightable, works must be original and possess "at least some minimal degree of creativity . . . some creative spark."  Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S.340, 345 (1991).  For a work which is a compilation of pre-existing material, the focus is on whether the "selection, coordination, or arrangement of those materials" results in an "original" work of authorship.  Id.

The Baker Plantation defendants argue that the Works lack this necessary creativity, because the designs are simply of a square-shaped pool house and rectangular pool, utilitarian in nature, and entirely attributable to the requirements put forth by South Carolina building codes.  ECF No. 101 at 8.  Sinclair responds that the Works are original works of authorship that contain the minimal degree of creativity required to support its existing, registered copyright in those materials.  ECF No. 109 at 8. The parties submitted copies of the Works to the court.  ECF No. 92-4.

Whether or not a work qualifies under the law for copyright protection is a legal question. However, the court must first decide whether the Works are sufficiently creative and original, or whether they are simply utilitarian architecture plans. This is a factual determination the court is not currently equipped to make. Discovery would need to be conducted on any differences between the Works and standard models of pools and pool houses, to enable the court to determine if there was any creativity added, or if the Works are solely utilitarian. The trier of fact would need to hear expert opinion on how these types of plans are usually developed, before deciding whether this is an original and creative work. Because this is ultimately a disputed question of fact, the court denies summary judgment on this ground.

### 2. Intended Use of the Works

The Baker Plantation Defendants next contend that, even if the Works are entitled to copyright protection, defendants were granted, either by implication or waiver, license to use the Works for the limited purpose of constructing the Baker Plantation pool and amenity center. ECF No. 101 at 8. Sinclair responds that the defendants never had an implied license to use the Works, because the record establishes that Sinclair never conveyed to any entity other than Summerville Homes a license to use the Works. ECF No. 109 at 13. Both parties offer conflicting deposition and affidavit testimony in support of their positions.

The Baker Plantation defendants point to an email dated April 30, 2009 from Randy Patrick ("Patrick"), a Sinclair employee, to Hujik, vice president of CresCom and a former defendant in this matter. ECF No 101 at 2. The Baker Plantation defendants claim that, along with this email, Sinclair provided the Works directly to CresCom for the

purpose of allowing CresCom to market the project to potential developers.  Id. at 2, citing Ex. 5, Email from Patrick to Hujick 4/30/09.  In support, they cite to Patrick's deposition testimony.  The email does indeed indicate that Sinclair sent the plans for the pool and amenity center.  However, the portion of Randy Patrick's testimony cited by the Baker Plantation defendants does not indicate exactly what they claim it does.  In response to a question about his understanding of what the email recipient would do with the Works, Patrick answers that "they wanted to know what they owned. . . what had been planned on those sites, more of a concept than take them out and, here's your plans, go at it . . . Plans were always owned by the company.  They're copyrighted.  They're owned by Sinclair and Associates."  Id., citing Ex. 6, Patrick Dep. 21:21–22:10.  This does not clearly indicate that Sinclair's purpose in sending the Works was for CresCom and others to use Sinclair's plans to develop their property—to "go at it"—independently of Sinclair.  The Baker Plantation defendants next claim that Sinclair again provided the pool and amenity center plans to CresCom in 2011, at which time CresCom indicated its intention to share the plans with prospective purchasers of the Baker Plantation development project.  Id., citing Ex. 2, CresCom 30(b)(6) Dep. pp. 17–35.  Yet the cited portion of CresCom's 30(b)(6) deposition does not conclusively support that claim.  The deposition merely indicates that when Hujik received the Works, he merely personally believed they were sent to help find another developer.  Id. Ex. 2, CresCom 30(b)(6) Dep. 21:12–22.

Because the parties have not presented sufficient, undisputed evidence upon which the court could determine that the Baker Plantation defendants had an express or

implied right to use the Works as they did, the court denies the motion for summary judgment on this ground.

### C.    Crescent Homes's Motion for Summary Judgment

Crescent Homes filed a separate motion for summary judgment, based on two grounds. First, Crescent Homes reiterates the same argument as the Baker Plantation defendants—that Sinclair's pool and amenity center plans are not sufficiently original or creative to warrant protection under the Copyright Act. ECF No. 103. The court denies the motion for summary judgment on this ground, based on the reasons explained in Section III.B.1.

Second, Crescent Homes requests summary judgment based on the ground that it did not reproduce, distribute, copy, transfer, or otherwise use the plans, and is therefore not liable under a Copyright Act claim. Id. at 9. Sinclair's complaint alleges that Crescent Homes wrongfully possessed the Works, knew that Sinclair would need to license any use of the Works, used the Works to construct the amenities center and pool at Baker Plantation, and reproduced the Works. Compl. ¶¶87–93. Sinclair also alleges that Crescent Homes distributed a copy of the Works to Park Investors and to Sample, the engineer hired by Crescent Homes to complete the project, knowing that Sample intended to use the Works to make a derivative work from them. Id. at 94–115, ECF No. 110 at 14. However, Sample's deposition does not actually specify who gave him the Works. ECF No. 110, Ex. 8, Sample Dep. 22:8–23:24.

Crescent Homes argues that it never distributed the Works to Sample or any other person or entity, citing the affidavit of Max Welch, an engineer who claims he met with Sample on behalf of Park Investors. ECF No. 103 at 10, citing Ex. 9, Welch Affidavit, at

4.  Crescent Homes points to this as evidence of the fact that no one from Crescent Homes gave the plans to Sample.  However, a jury could find that Crescent Homes was involved in the transfer of Works, given that the meeting took place at its office. Whether or not Crescent Homes reproduced or distributed the Works is a material fact underlying Sinclair's copyright infringement action against Crescent Homes.  There is a genuine dispute about that fact, which is best left for the jury.  Thus, the court denies Crescent Homes's motion for summary judgment on this ground.

### D.  Defendants' Motion in Limine

Defendants move the court to rule as inadmissible the following categories of evidence: (1) evidence of general income, wealth or financial status of Crescent Homes; (2) evidence of Terry's general personal income and/or net worth; and (3) evidence of Sample's voluntary relinquishment of his professional engineering license to the South Carolina Department of Labor, Licensing and Regulation.  ECF No. 98.  The court denies the motion in limine regarding each category of evidence.

### 1.  Evidence of Crescent Homes and Edward Terry's General Income, Wealth or Financial Status

Defendants first ask the court to exclude any evidence of the general income, wealth or financial condition of Crescent Homes and Terry, arguing that it is irrelevant under Federal Rules of Evidence 401 and 402.  They ask the court to limit the financial evidence to revenue earned from the project relevant to the suit—the amenities center at Baker Plantation. ECF No. 98 at 2.  Defendants seek to exclude any other evidence about Crescent Homes and Terry's overall financial earnings and general financial conditions. The court addresses these two requests for exclusion simultaneously, as the arguments dovetail substantially.

Certainly, the calculation of damages for claims brought under the federal Copyright Act is limited to those damages incurred by the actual copyright violation. 17 U.S.C.A. § 504. Defendants' request to limit the evidence of general financial status to that of the allegedly infringing structure—the amenities center at Baker Plantation—is reasonable. However, the overall financial earnings and general financial conditions are relevant for the calculation of punitive damages. See Mattison v. Dallas Carrier Corp., 947 F.2d 95, 100 (4th Cir. 1991) ("[South Carolina] court decisions state that the financial ability of the defendant is a relevant factor for consideration by the jury [in calculating punitive damages]."). Because the court denies defendants' motion for partial summary judgment, Sinclair's state law claim for conversion remains. Punitive damages are available for claims of conversion under South Carolina state law. See Mackela v. Bentley, 614 S.E.2d 648, 651 (S.C. Ct. Ap. 2005) (Holding that "[p]unitive damages are recoverable in conversion cases if the defendant's acts have been willful, reckless, and/or committed with conscious indifference to the rights of others"). Therefore, evidence on the amount of general income, wealth, and financial status of Crescent Homes and Edward Terry is admissible.

**2.      Evidence of Sample's Voluntary Relinquishment of Professional Engineering License**

Sample was a professional engineer employed by Antler Road who performed design work on the Baker Plantation amenities center. ECF No. 98 at 5. According to Sinclair, Sample edited the drawings of the Works and then used these altered drawings to obtain a permit for construction from DHEC. Id. Sinclair filed a notice of complaint with the South Carolina Department of Labor, Licensing, and Regulation about Sample's work on the Baker Plantation amenity center. Id. Sample then voluntarily relinquished

his professional engineering license.  Id.  Defendants now seek to exclude any reference to Sample's voluntary relinquishment of his license, arguing that they would be unfairly prejudiced by the admission of this evidence because a jury could be wrongly influenced by it to find that defendants actually infringed a copyright.  Id.

Sample testifies that he relinquished his license because he did not want to be involved in a licensing dispute.  When asked if he was aware at the time he received the licensing board complaint that he had engaged in any wrongdoing as to Sinclair's amenity center, Sample replied "if I make that big a mistake, it's time to stop."  ECF No. 100-8, Sample Dep. 37:8–39:5.  Sinclair argues that this evidence "demonstrates that defendants' use of the works was without [Sinclair's] permission," that Sinclair "considers the Works its protectable intellectual property," and is probative of the defendants' "knowledge of the wrongfulness of their acts."  ECF No. 100 at 9.  The court does not find Sinclair's arguments on this point wholly persuasive.  In his deposition, Sample also testifies that he relinquished his license to avoid the burden and expense of responding to the complaint, and "absolutely" did not believe that he had done anything wrong to receive the complaint. ECF No. 100-8, Sample Dep. 37:8–39:5.

Sample's deposition testimony and other evidence regarding his relinquishment of his license does not appear to be a question of admissibility as much as it is a question of weight.  The jury, as the fact-finder, is in the best position to determine which of Sample's statements to believe—that he "absolutely" did nothing wrong to receive the complaint, or that he was aware that by altering Sinclair's copyrighted proofs for the Works he had committed wrongdoing such that the licensing board could have stripped him of his professional engineering license.  This evidence is not so "clearly inadmissible

for any purpose" that it should be excluded at this stage. Furthermore, defendants can raise any objection based on Federal Rule of Evidence 403 at trial, when the court is better positioned to rule on it.

### E.    Sinclair's Motion for Sanctions

Sinclair moves for sanctions against Terry due to his alleged noncompliance with the following two interrogatories:

> Interrogatory No. 2: Provide an itemized list of all of Defendant's deductible expenses and elements of profits attributable to factors other than the amenity center at Baker Plantation, separately for each of the following years: 2010, 2011, 2012, 2013, 2014, 2015, and 2016. (As used in this interrogatory, "deductible expenses" and "elements of profit" shall have the same meaning as they appear and are used in 17 U.S.C. § 504(b), which is hereby incorporated by reference).

> Interrogatory No. 4: State Defendant's net worth, separately for each of the following years: 2010, 2011, 2012, 2013, 2014, 2015, and 2016.

Sinclair asks the court to impose sanctions on Terry for his failure to comply with this court's prior order compelling Terry to respond to Sinclair's discovery requests. ECF No. 117 at 1. On August 4, 2017, the court ordered Terry to produce the requested discovery by August 11, 2017. ECF No. 106. Terry did not provide the requested discovery by the deadline, but on September 22, 2017, sent supplemental responses. Sinclair now argues that these supplemental responses do not provide sufficient answers to the requested discovery. The court agrees.

Under FRCP 37(d), a district court may sanction a party if the "party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). A review of cases where courts have found sanctions for discovery misconduct is instructive here. In <u>Poole ex rel. Elliott v. Textron, Inc.</u>, 192 F.R.D. 494,

511 (D. Md. 2000), the court noted that defendant had provided a "misleading, if not outright false, answer to an interrogatory" and found "particularly egregious" that defendant had not performed an "even minimally-adequate search for documents" prior to plaintiff's motion for sanctions. Similarly, in <u>First Mariner Bank v. Resolution Law Grp.</u>, 2013 WL 5797381, at *3 (D. Md. Oct. 24, 2013), <u>on reconsideration in part sub nom.</u> <u>First Mariner Bank v. Resolution Law Grp., P.C.</u>, 2013 WL 6404998 (D. Md. Dec. 5, 2013), the court awarded sanctions where defendants had failed to adequately respond to discovery requests despite the court's "repeated" orders to do so. Here, it does not appear that Terry has engaged in improper discovery tactics to the same extent as the defendant in <u>Textron</u>, although Terry has certainly delayed producing the requested discovery. Additionally, the court has not issued repeated orders compelling discovery— although it has already compelled discovery once—like the court in <u>First Mariner Bank</u>. However, Terry should have filed any possibly meritorious arguments it had for its refusal to provide responses before the court before it issued its August 4, 2017 order compelling discovery. Terry cannot ignore an order of the court. Thus, the court orders Terry to provide Sinclair with the requested information. Additionally the court imposes sanctions on Terry for the cost of attorney's fees related to Sinclair's efforts to obtain this discovery, in the amount of $1,030.00.

  **F.**  **Defendants' Motion to Bifurcate**

  Defendants move for the court to bifurcate the trial, resulting in separate trials on the liability issue and damages. ECF No. 104. Sinclair responds that bifurcation would not promote judicial economy and indeed, would prejudice Sinclair. ECF No. 111. The court agrees and denies the motion to bifurcate.

The decision to bifurcate depends on whether the damages calculation will be so complex as to warrant bifurcation. Defendants contend that because one of the remaining two claims in this action is for copyright infringement under the Copyright Act, the damages sought are only those that are "attributable" to the infringement. 17 U.S.C. § 504. After determining what portion of the profits from Baker Plantation is attributable to the allegedly infringing amenity center—a complex task considering that will involve distinguishing what portion of the profits of homes purchased in Baker Plantation are due to the amenity center—this amount is offset by any deductible expenses and other elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(h). Presentation of damages testimony will require financial data of Crescent Homes and of Terry individually, as well as a number of financial documents.

Sinclair contends that, despite the complexity of damages calculations here and the existence of other copyright cases that have been bifurcated, there is no legitimate basis for bifurcation in the instant case. ECF No. 111 at 5. The court agrees. Certainly, a number of courts—in this circuit and beyond—have bifurcated copyright infringement and patent infringement cases. See e.g., M2 Software, Inc., a Delaware corporation v. Madacy Entm't, 421 F.3d 1073, 1088 (9th Cir. 2005) (upholding district court's decision to bifurcate a trademark infringement trial). But here, where there is both a copyright infringement claim and a common law conversion claim, bifurcation is not warranted. The decision in White Chemical Corp. v. Walsh Chemical Corp., 116 FRD 580 (W.D.N.C. 1987) is particularly instructive.

In White Chemical Corp., the court granted a motion for bifurcation of liability in a patent infringement action for manufacturing flame-retardant textiles where there was

minimal overlapping evidence in the liability trial and the damages trial, and a determination of no liability could entirely avoid the need for a trial pertaining to damages.  White Chemical Corp., 116 FRD at 582.  Here, even if the jury finds that defendants are not liable for infringing the federal Copyright Act, it could still find that Sinclair prevails on the common law conversion claim.  The standard for damages relevant for the conversion claim is not the same "directly attributable" standard outlined in the Copyright Act.  The facts and issues about defendants' liability for conversion are not "readily separable" from those of damages.  Unlike in White Chemical Corp., the evidence in the liability phase and the damages phase would overlap.  This is more like Organic Chemicals, Inc. v Carroll Products, Inc., 86 F.R.D. 468 (W.D. Mich. 1980), an action involving patent, contract, and tort issues where the court determined that because the issues were "not separable" and the evidence would likely overlap, bifurcation was not warranted.

Neither the law nor judicial economy favors bifurcating the trial.  The court will follow the lead of Laitram Corp. v. Hewlett-Packard Co., 791 F. Supp. 113, 22 (E.D. La. 1992), where the court denied the defendants' motion to bifurcate the liability and damages issue in a patent infringement case but instead ordered a single trial that had separate phases for liability and damages.  This will address the potential for jury confusion on the numerical complexity of the damages issue for those damages that are "attributable" to the infringing work, but also serve the interests of convenience, efficiency, and judicial economy.

## IV.   CONCLUSION

For the reasons set for above, the court **DENIES** defendants' motion for partial summary judgment, **DENIES** Baker Plantation defendants' motion for summary judgment, **DENIES** Crescent's motion for summary judgment, **DENIES** defendants' motion in limine, **GRANTS** Sinclair's motion for sanction, and **DENIES** defendants' motion to bifurcate.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 2, 2018**
**Charleston, South Carolina**